**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:23-CR-00198 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| SOLOMON J. STALLINGS, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER RESOLVING MOTION TO** |
| Defendant. | ) | **SUPPRESS (ECF NO. 35)** |

The question before the Court is whether affidavits used to obtain warrants for a GPS tracking device on Defendant Solomon Stallings's car and for the search of two properties associated with Defendant provided probable cause for the issuance of the warrants. The Court finds that they did.

**I.  FACTUAL BACKGROUND**

**A.  The Affidavits**

The subjects of the Court's inquiry are four separate warrant affidavits. Two of those affidavits sought warrants to obtain electronic data through a GPS tracker placed on Defendant's 2014 BMW 750Li. (ECF Nos. 35-1 & 35-3). Law enforcement also prepared an affidavit seeking a warrant to search 1180 Grant Street, Akron, 44301 Summit County, Ohio ("Grant Street"), which is a retail store owned by Defendant. (ECF No. 35-6). The fourth affidavit sought a warrant to search 486 Comet Lane, Clinton, 44216 Summit County, Ohio ("Comet Lane"), which is an address where Defendant resided at the time. (ECF No. 35-5).

*1.  GPS Affidavits*

On November 8, 2022, Detective Brandenburg (a member of the Akron Police Department's ("APD") Narcotics Unit) filed an affidavit seeking a 45-day warrant to install and

1

receive data from a GPS tracker on a BMW then driven by Defendant ("GPS Affidavit #1"). (ECF No. 35-1, PageID #93; 97). Brandenburg explained that he was in the process of investigating Defendant's alleged drug trafficking and drug possession. (*Id.* at PageID #94). Brandenburg had observed Defendant driving the BMW since September 2022. (*Id.*).

The Affidavit includes details from three separate controlled drug purchases 60, 30, and 7 days prior to requesting the warrant at issue. (*Id.* at PageID #95). Common among these controlled purchase transactions are the following facts: (1) the transactions were facilitated by a confidential informant (CI), who Brandenburg both briefed and searched beforehand to ensure that the CI did not already possess any money or drugs; (2) law enforcement provided the CI with funds to facilitate the drug purchases; (3) law enforcement surveilled Grant Street before and during each transaction, observing the BMW parked out front, and constantly surveilled the CI before, during, and after each transaction; and (4) the CI gave Brandenburg fentanyl and/or cocaine that the CI stated was purchased from Defendant with the funds provided by law enforcement. (*Id.* at PageID #95–96). Within seven days before requesting the warrant, law enforcement conducted mobile and stationary surveillance, observing the BMW parked in front of Grant Street on a regular basis; they also observed short-term traffic to and from the location consistent with drug trafficking activity. (*Id.* at PageID #96).

According to Brandenburg, the CI was reliable because Brandenburg received corroborated information from this source in the past, and the source had shown "specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area." (*Id.*). Brandenburg confirmed that the BMW's license plate was registered to Defendant and that Defendant had a previous criminal history including drug trafficking, drug possession, and possessing weapons under disability. (*Id.*). Another information source (other than CI) told

Brandenburg that Defendant was trafficking methamphetamine and fentanyl out of Grant Street and confirmed that Defendant uses the BMW. (*Id.*).

Based on this information, Brandenburg stated that there is probable cause to believe that placement of a GPS tracker on the BMW would lead investigators to locations where Defendant "acquires, stores and distributes methamphetamine, cocaine and fentanyl" along with where Defendant "stores currency and proceeds derived from drug trafficking." (*Id.* at PageID #97). Brandenburg told the Court that he also needed this warrant to identify Defendant's whereabouts, associates, and co-conspirators. (*Id.*). Based on this affidavit, Summit County Common Pleas Judge Joy Malek Oldfield issued the requested warrant. (ECF No. 35-2).

Brandenburg returned to the court on December 20, 2022, seeking a 45-day extension of the GPS tracking warrant ("GPS Affidavit #2"). (ECF No. 35-3). This affidavit again informed the court that the APD Narcotics detectives conducted controlled drug purchases 90, 60, 30, and 7 days before seeking the warrant extension. (*Id.* at PageID #101). Brandenburg facilitated these transactions in the same ways that he did the transactions described in GPS Affidavit #1, again arranging purchases of fentanyl and/or cocaine from Defendant through a CI. (*Id.* at PageID #101–02).

As stated in GPS Affidavit #1, APD Narcotics detectives continued to observe the BMW outside of Grant Street, along with short-term traffic consistent with drug trafficking through mobile and stationary surveillance. (*Id.* at PageID #102). The CI referenced in GPS Affidavit #2 told Brandenburg that Defendant trafficked narcotics out of Grant Street "to multiple people throughout the day and night." (*Id.*). The CI used in each controlled purchase was deemed reliable because Brandenburg had received information from this source in the past that was corroborated,

3

and the source has shown "specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area." (*Id.* at PageID #103).

Through both live surveillance and the data produced by the GPS tracker, Brandenburg learned that Defendant frequently travelled to a suspected drug trafficking location, where Defendant spent "a significant amount of time." (*Id.* at PageID #103). The GPS tracker revealed that Defendant traveled to multiple drug stash locations, which Brandenburg verified as known drug locations. (*Id.*). Brandenburg reiterated that he has facilitated controlled drug purchases at Grant Street and observed the BMW outside Grant Street during each transaction. (*Id.*). Brandenburg told the Court that he needed an additional 45-day warrant to continue his investigation into the locations where Defendant acquired, stored, and distributed drugs, and to identify Defendant's whereabouts, associates, and co-conspirators. (*Id.* at PageID #104). Based on this affidavit, Judge Oldfield again issued the requested warrant. (ECF No. 35-4).

### 2. *Grant Street Affidavit*

On February 1, 2023, Brandenburg sought two search warrants related to the data obtained from the GPS tracker. The first warrant affidavit concerned Grant Street, its curtilage, and any computers and electronically stored media therein ("Grant Street Affidavit"). (ECF No. 35-6, PageID #120; 122–26). Brandenburg described Grant Street as a single-story retail store with a sign that read "LA GOODS." (*Id.* at PageID #120). Defendant registered "LA GOODS" with the Ohio Secretary of State in his name. (*Id.* at PageID #129). The Grant Street Affidavit contemplated the collection of evidence to support state-court charges of Trafficking in Controlled Substances, Possession of Controlled Substances, and Having Weapons While Under Disability. (*Id.* at PageID #120). Brandenburg recounted his training and experience that led him to the conclusions in the Grant Street Affidavit. (*Id.* at PageID #120–22).

4

Under the section titled, "**PROBABLE CAUSE**," Brandenburg explained that Defendant was the subject of a joint APD and FBI investigation that had been working to uncover the details of Defendant's suspected narcotics trafficking since August 2022. (*Id.* at PageID #126). Within seven days of making the Grant Street Affidavit, a confidential informant (CS-1) told Brandenburg that Defendant possessed and was trafficking fentanyl, cocaine, marijuana, and methamphetamine from Grant Street and other locations. (*Id.* at PageID #127). CS-1 also told Brandenburg that Defendant was known to possess firearms at Grant Street, and that he had observed Defendant with a firearm on his person numerous times at Grant Street. (*Id.* at PageID #128). Brandenburg attests that CS-1 is a reliable, paid informant, having historically provided him with information that was corroborated; CS-1 also performed controlled drug purchases for the APD, and demonstrated "specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area." (*Id.* at PageID #127).

Within seven days of making the Grant Street Affidavit, APD Narcotics detectives conducted a controlled drug purchase from Defendant using a confidential informant (CI). (*Id.*). Like the CIs referenced in GPS Affidavits #1 and #2, Brandenburg briefed and searched the CI before to ensure that the CI did not already possess any money or drugs. (*Id.*). APD Narcotics detectives provided the CI with funds to facilitate the drug purchases. (*Id.*). Brandenburg constantly surveilled the CI at the location of the purchase, 560 Sharon Street ("Sharon Street"), prior to and during the operation; he also saw Defendant arrive in the BMW they had previously tracked. (*Id.*). Brandenburg observed the CI walk up the back steps and enter the building. (*Id.*). After the CI's brief interaction with Stallings inside Sharon Street, the CI exited and went to a pre-determined meeting location; he remained under constant surveillance. (*Id.*). The CI gave

5

Brandenburg fentanyl that the CI said he purchased from Defendant with the funds provided by law enforcement. (*Id.*).

Brandenburg described another controlled drug purchase at Grant Street that occurred within 45 days of the Grant Street Affidavit. (*Id.*). APD Narcotics detectives facilitated this transaction using the same methods as the Sharon Street controlled buy described above. (*Id.*). The CI involved in this controlled buy allegedly purchased methamphetamine from Defendant with the APD funds. (*Id.*). While constantly surveilling the transaction, APD Narcotics detectives observed the BMW parked outside Grant Street. (*Id.*). Another controlled drug purchase at Grant Street occurred within 90 days of the Grant Street Affidavit. (*Id.* at PageID #128). Again, APD Narcotics detectives facilitated this transaction in the same way as the others described in the Grant Street Affidavit, and again, detectives observed the BMW parked outside Grant Street during the transaction. (*Id.* at PageID #128). The CI purchased fentanyl from Defendant with APD funds. (*Id.*).

Brandenburg attested that electronic surveillance of the BMW showed that Defendant traveled from Grant Street to Sharon Street daily; he also observed short-term traffic consistent with drug trafficking at both locations. (*Id.*). While Defendant was at Sharon Street, Brandenburg watched Defendant engage in short meetings with individuals who arrived on foot, bicycle, and by vehicle, which is consistent with drug trafficking. (*Id.*). The GPS data showed that Defendant spent between six and ten hours per day at Grant Street over the last 90 days; that pattern continued within the seven days leading up to the Grant Street Affidavit's creation. (*Id.*). Since August 2022, Brandenburg conducted mobile and stationary surveillance of Grant Street during both day and nighttime hours and observed short-term traffic consistent with drug trafficking while the BMW was parked outside. (*Id.*). The APD Narcotics Unit also received an anonymous call in September

6

2022 reporting that Defendant used Grant Street as a "front" to "hide his drug traffic activity and pretends to sell everyday items." (*Id.*).

On December 30, 2022, Brandenburg received a call from Detective McClung of the Parkersburg (West Virginia) Narcotics Task Force. (*Id.*). McClung told Brandenburg that he had spoken with one of his confidential informants (CI) who stated that the CI drove two other individuals to Grant Street to meet with the building's owner. (*Id.* at PageID #128–29). The CI dropped the two individuals off at Grant Street; the individuals "brought a large amount of money with them and stated the two people would be purchasing a large amount of narcotics." (*Id.* at PageID #129). McClung coordinated a traffic stop of the individuals with Trooper Hughes of the West Virginia State Police. (*Id.*). "Trooper Hughes recovered 118 grams of crystal methamphetamine from the backseat of the vehicle," and the vehicle's occupants "were charged with Possession of Drugs." (*Id.*). According to McClung, the CI was reliable and had assisted Parkersburg Narcotics Task Force for several years, "conducting controlled buy[s] and providing law enforcement with collaborated information.[1]" (*Id.*) (clarification added).

Brandenburg requested the ability to search individuals in and around Grant Street during the execution of the search warrant; he also requested permission to make a swift entry into Grant Street if necessary, and the option to extend the warrant if his search of electronic media takes more than three days. (*Id.* at PageID #130). Based on the totality of this information, Judge Oldfield issued the requested warrant to search Grant Street. (ECF No. 35-7).

### 3. *Comet Lane Affidavit*

The second search warrant Brandenburg sought on February 1, 2023, was for Comet Lane, its curtilage, and any computers and electronically stored media therein ("Comet Lane Affidavit").

---

[1] While the affidavit says, "collaborated information," the Court assumes this is intended to be corroborated information.

7

(ECF No. 35-5, PageID #106; 109–12). Like the Grant Street Affidavit, the Comet Lane Affidavit contemplated the collection of evidence to support state-court charges of Trafficking in Controlled Substances, Possession of Controlled Substances, and Having Weapons While Under Disability. (*Id.* at PageID #120). Brandenburg recounted his training and experience that led him to the conclusions in the Comet Lane Affidavit. (*Id.* at PageID #107–08).

The Comet Lane Affidavit's "**PROBABLE CAUSE**" section begins the same as the Grant Street Affidavit's. Brandenburg again explains that Defendant was the subject of a joint APD and FBI investigation; that a confidential informant (CS-1) told Brandenburg that Defendant possessed and was trafficking fentanyl, cocaine, marijuana, and methamphetamine from Grant Street and other locations; and that he had observed Defendant with a firearm on his person at Grant Street, and is generally known to possess a firearm there. (*Id.* at PageID #113; 115). Brandenburg's statements about CS-1's reliability are identical to those contained in the Grant Street Affidavit.[2] (*Id.* at PageID #113). The Comet Street Affidavit also repeated (1) the descriptions of the controlled purchases at Sharon Street and Grant Street; (2) the evidence of Defendant's travel from Grant Street to Sharon Street; (3) Defendant's Sharon Street meetings discussed in the Grant Street Affidavit; (4) Brandenburg's mobile and stationary surveillance of Grant Street during day and nighttime hours; (5) the September 2022 anonymous call that Defendant used Grant Street as a "front"; and (6) the arrests associated with the Parkersburg Narcotics Task Force. (*Id.* at PageID #113–15).

---

[2] The Court notes that the Comet Lane Affidavit's statements about CS-1's reliability appear before the discussion of the information provided by CS-1 to Brandenburg. (ECF No. 35-5, PageID #113). Despite this, Brandenburg states that "the confidential informant listed in the *previous* paragraphs of this affidavit have [*sic*] provided the Affiant and APD Narcotics detectives with information concerning the sale of controlled substances in the Akron, Summit County, Ohio area, which information has been corroborated by APD Narcotics detectives." (*Id.*). Given that neither party raised this issue in their briefs, the Court will assume that this is a typographical error, and that Brandenburg intended to refer to the "*following*" paragraphs rather than "*previous*" ones.

The Comet Lane Affidavit went on to specify Defendant's connection with Comet Lane. Mobile and electronic surveillance of Defendant's BMW showed that Defendant regularly left Grant Street in the late evening hours and traveled to Comet Lane, where he spent the night. (*Id.* at PageID #115). Brandenburg's physical surveillance showed that Defendant's BMW sat in Comet Lane's driveway in the early morning hours. (*Id.*). Brandenburg attested: "While conducting mobile and electronic surveillance, affiant has followed STALLINGS to 486 Comet Lane during the day in which STALLINGS stays for a short amount of time and then travels to 560 Sharon Street and 1180 Grant Street." (*Id.*). Brandenburg stated that Defendant's girlfriend, Amanda Prater, resides at Comet Lane, and that she and Defendant contacted each other daily by cell phone. (*Id.*). He learned in December 2022 that the electricity service for Grant Street had been in both of their names. (*Id.* at PageID #116). Brandenburg received information from a source indicating that Defendant lived at Comet Lane. (*Id.*).

Brandenburg conducted mobile and electronic surveillance of Defendant during the week of January 23, 2023. Brandenburg observed Defendant leave Comet Lane and drive directly to a store on the corner of Rhodes Avenue and West Market Street without stopping. (*Id.* at PageID #116). Around 9:00 PM, Brandenburg saw Defendant meet with an individual driving a brown SUV in the parking lot; after a brief interaction, Defendant and the individual drove off in different directions. (*Id.*). Brandenburg asserted that drug traffickers often conceal their drugs "within their residence in case their separate drug trafficking location is compromised." (*Id.*). He also stated that traffickers often conduct drug transactions at locations other than their residences to avoid detection by law enforcement. (*Id.*).

Brandenburg also attested that, on March 31, 2017, APD detectives discovered that individuals at 905 E. Buchtel Avenue were trafficking methamphetamine. (*Id.*). Detectives

observed a grey Audi pull into the driveway and a male and female exit the car and enter the residence. (*Id.*). After the male and female left in the Audi, detectives initiated a stop; Defendant was driving the car and had Amanda Prater with him as a passenger. (*Id.*). Detectives recovered 40 grams of methamphetamine near Defendant's foot and $1,069 in U.S. Currency. (*Id.*). Defendant was later convicted of Possession of Drugs through Summit County Court of Common Pleas Case No. CR-2017-04-1169. (*Id.*).

Like the Grant Street Affidavit, Brandenburg requested the ability to search individuals in and around Comet Lane during execution of the search warrant; he also requested permission to make a swift entry into Comet Lane, if necessary, and the option to extend the warrant if his search of electronic media takes more than three days. (*Id.* at PageID #117). Based on all of this information, Judge Oldfield issued the requested warrant to search Comet Lane. (ECF No. 35-8).

### B. The Indictment

Defendant was charged by way of Indictment on April 6, 2023. (ECF No. 1). He was charged as follows: Counts 1 and Two, Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); Count Three, Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Count Four, Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and Count Five, Possession of Firearms in Furtherance of Drug Trafficking Offenses in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.* at PageID #1–4). The Indictment also includes a forfeiture provision seeking the forfeiture of five firearms seized from Grant Street, $19,043.00 in U.S. Currency and one firearm seized from Comet Lane, and any and all property associated with or derived from Defendant's drug offenses. (*Id.* at PageID #4–5).

### C. Defendant's Motion to Suppress

Now before the Court is a Motion to Suppress filed by Defendant. (ECF No. 35). Defendant asks this Court to suppress (1) the evidence seized by law enforcement related to a GPS tracker attached to Defendant's car, and (2) the evidence seized by law enforcement during the searches of Grant Street and Comet Lane. (*Id.* at PageID #82). Defendant claims that these searches and seizures violated his Fourth Amendment rights; the "bare bones" affidavits for warrants associated therewith did not provide the issuing judge with sufficient information to find probable cause, and law enforcement's reliance on the judge's probable cause determination was not objectively reasonable. (*Id.*).

The Government opposed Defendant's motion. (ECF No. 39). The Government explains that the affidavits related to the GPS tracker and Grant Street each included detailed descriptions of multiple controlled drug purchases performed the APD's Narcotics Unit in conjunction with a reliable, confidential informant. (*Id.* at PageID #141). During each of the controlled purchases at Grant Street, Defendant's black 2014 BMW 750Li was parked out front, and the informant observed Defendant carrying a firearm. (*Id.*). The GPS tracker, along with law enforcement's mobile surveillance of Defendant's car, showed that Defendant resided at Comet Lane. (*Id.* at PageID #153). Defendant traveled directly from Comet Lane to the corner of Rhodes and West Market to engage in, what appeared to be, a drug transaction; Defendant traveled straight from Comet Lane to another controlled purchase location on Sharon Street daily where law enforcement observed short-term traffic consistent with drug trafficking activity; Defendant often stopped briefly at Comet Lane, then traveled directly to either Grant Street or Sharon Street, both of which were controlled purchase locations. (*Id.*).

### C. Defendant's Motion to Suppress

Now before the Court is a Motion to Suppress filed by Defendant. (ECF No. 35). Defendant asks this Court to suppress (1) the evidence seized by law enforcement related to a GPS tracker attached to Defendant's car, and (2) the evidence seized by law enforcement during the searches of Grant Street and Comet Lane. (*Id.* at PageID #82). Defendant claims that these searches and seizures violated his Fourth Amendment rights; the "bare bones" affidavits for warrants associated therewith did not provide the issuing judge with sufficient information to find probable cause, and law enforcement's reliance on the judge's probable cause determination was not objectively reasonable. (*Id.*).

The Government opposed Defendant's motion. (ECF No. 39). The Government explains that the affidavits related to the GPS tracker and Grant Street each included detailed descriptions of multiple controlled drug purchases performed the APD's Narcotics Unit in conjunction with a reliable, confidential informant. (*Id.* at PageID #141). During each of the controlled purchases at Grant Street, Defendant's black 2014 BMW 750Li was parked out front, and the informant observed Defendant carrying a firearm. (*Id.*). The GPS tracker, along with law enforcement's mobile surveillance of Defendant's car, showed that Defendant resided at Comet Lane. (*Id.* at PageID #153). Defendant traveled directly from Comet Lane to the corner of Rhodes and West Market to engage in, what appeared to be, a drug transaction; Defendant traveled straight from Comet Lane to another controlled purchase location on Sharon Street daily where law enforcement observed short-term traffic consistent with drug trafficking activity; Defendant often stopped briefly at Comet Lane, then traveled directly to either Grant Street or Sharon Street, both of which were controlled purchase locations. (*Id.*).

On Reply, Defendant admitted that he owns the black 2014 BMW 750Li in question. (ECF No. 43, PageID #164). He maintains, however, that the GPS affidavits lacked factual data to prove that Defendant used his car to facilitate drug trafficking. (*Id.*). He also argues that the Comet Lane affidavit did not establish a strong enough nexus between Comet Lane and any relevant criminal activity. (*Id.* at PageID #165).

Both parties advanced arguments for and against application of the good faith exception to the warrant requirement. (ECF No. 35, PageID #90–91; ECF No. 39, PageID #154–56; ECF No. 43, PageID #166–67). The Court needs not reach these arguments to resolve Defendant's Motion to Suppress. Additionally, since the parties do not dispute the facts contained in the warrant affidavits, the Court declines to hold a hearing on Defendant's Motion.

## II. DISCUSSION

Defendant's Motion to Suppress invokes the Fourth amendment, which ensures that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant argues that the warrant affidavits did not provide the state judge with a substantial basis for finding probable cause; as a result, he asserts that the warrants violate his Fourth Amendment rights. (ECF No. 35, PageID #82).

### A. The Probable Cause Requirement

The precise meaning of "probable cause" continues to elude federal courts of all levels in the United States. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (explaining that "probable cause" is "incapable of precise definition or quantification into percentages"). In the Sixth Circuit, "A finding of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2016) (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)) (internal quotations omitted). This is "not a high bar to clear." *Id.* (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). At its core, probable cause "depends on the totality of the circumstances." *Sanders*, 106 F.4th at 461 (quoting *Pringle*, 540 U.S. at 371).

An affidavit seeking a warrant must establish "a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A court reviewing the sufficiency of the evidence supporting probable must limit such review to the "four corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

Once a warrant is issued, courts give the warrant-issuing judge's probable cause determination "great deference," questioning only whether the judge had a "substantial basis" for his or her conclusion. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013); *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021). A court may only reverse a warrant-issuing judge's probable cause decision if the judge "arbitrarily exercised his or her authority. *Id.*

### B. The GPS Affidavits

Defendant argues that GPS Affidavits #1 and #2 fail to establish probable cause that installation of the GPS tracker on Defendant's BMW would lead to evidence of a crime or the identification of individuals engaged in criminal activity. (ECF No. 35, PageID #86–87). Defendant calls the GPS Affidavits requests to conduct a "fishing expedition"; he argues that Grant Street was a retail clothing store, which necessarily invites short term traffic, and that Brandenburg offered no specific facts in the GPS Affidavits "such as time of day, length of stay, or any other specific facts to support his assertions." (*Id.* at PageID #86).

In *United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019), the Sixth Circuit affirmed denial of a motion to suppress data retrieved by a GPS tracker based on the warrant affidavit's sufficiency. There, a CI known to the investigating officer told the officer that Crawford was dealing cocaine. *Id.* at 302. The officer affirmed that Crawford had prior convictions for drug trafficking offenses. *Id.* at 302–03. The warrant affidavit informed the state court judge that the CI claimed he could buy cocaine from Crawford. *Id.* at 303. The CI later told the officer that Crawford drove a silver BMW X5; the officer confirmed that the BMW belonged to Crawford and saw him drive the BMW. *Id.* Based on this information, the Court held that the warrant-issuing judge "had ample reliable evidence to justify issuing the GPS-related warrant." *Id.* at 308.

Like the *Crawford* affidavit, both GPS Affidavits are supported by statements made and actions performed by a CI. In instances in which the CI is known to the affiant of a warrant affidavit, "[t]hat familiarity alone is enough to deem the informant reliable, for purposes of establishing probable cause." *Crawford*, 943 F.3d at 306. In another case, *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003), the Court found confidential informant reliable when the affiant attested that he knew the CI was reliable "from past information received from said CI", the affidavit included "the type of criminal activity with which the informant was familiar", and the CI personally purchased drugs at a relevant location.

In this case, Brandenburg explained that the CI referenced in both GPS Affidavits

> has provided the Affiant with information concerning the possession and sale of controlled substances in the Akron, Summit County, Ohio area, which information has been corroborated by APD Narcotics detectives. Further the confidential information has displayed [] specific knowledge as to the uses, effects and distribution patters of controlled substances in the Akron, Summit County, Ohio area.

(ECF No. 35-1, PageID #96; ECF No. 35-3, PageID #103) (clarification added). The CI told Brandenburg that, since September 2022, Defendant had owned and operated the BMW on a

14

regular basis. (ECF No. 35-1, PageID #94; ECF No. 35-3, PageID #100). Brandenburg himself corroborated this information; he observed Defendant drive the BMW since September 2022, and saw the BMW parked outside Grant Street. (*Id.*). More than the affidavit at issue in *Crawford*, this CI also bought drugs from Defendant pursuant to numerous controlled drug purchases. (ECF No. 35-1, PageID #95–96; ECF No. 35-3, PageID #101–02).

The cases Defendant cites—both from the Second Circuit—do not help his cause. In *United States v. Price*, 599 F.2d 494 (2d Cir. 1979), the Second Circuit addressed questions related to a *Terry* stop and warrantless "consent" search; neither involved the sufficiency of a GPS affidavit. *Id.* at 496. To the extent that *Price* addressed an officer's observation of a pattern of conduct to establish the reasonable suspicion necessary for a *Terry* stop, the Court stated, "[T]he powers of observation of an officer with superior training and experience *should not be disregarded*." *Id.* at 501 (emphasis added). Defendant's only other cited case, *United States v. Baptist*, 556 F. Supp. 284 (S.D.N.Y.), draws a distinction between the facts before it and *Price*: there was no allegation that the officer in *Baptist* had any particular kind of training "in the detection of the crime which he eventually uncovered." *Id.* at 289.

Here, both GPS Affidavits include statements by Brandenburg about his particular training and experience in narcotics investigations. He attests:

> Affiant is a member of the [APD] and has been so employed for the last 7 years. Affiant's current assignment is with the Akron Police Narcotics Unit. Affiant has conducted numerous criminal investigations involving drug trafficking and drug possession. Affiant has executed numerous search warrants for narcotics, dangerous drugs, and the electronically stored information, records, books and proceeds derived as a result of this illicit activity. Further, Affiant has arrested numerous individuals for charges involving illicit drug activity and conducted numerous surveillance operations.

15

(ECF No. 35-1, PageID #93; ECF No. 35-3, PageID #99). Brandenburg also states that the short-term traffic he and other detectives observed in front of Grant Street is "consistent with drug trafficking." (ECF No. 35-1, PageID #96; ECF No. 35-3, PageID #102). GPS Affidavit #2 further explains Brandenburg observed Defendant traveling to known drug locations. (*Id.* at PageID #103). Neither GPS Affidavit could be said to have been made by an affiant without relevant training and experience such that the affiant's findings are unreliable.

Instead, both GPS Affidavits contain sufficient facts from which the warrant-issuing judge could find probable cause. The totality of circumstances including the reliability of the CI, the controlled buys conducted by the CI and facilitated/surveilled by detectives, details that Defendant owned the BMW that was present during controlled purchases and had a criminal history that included drug trafficking, and Brandenburg's training and experience in investigating drug trafficking provided the state judge with a substantial basis for concluding there was probable cause.

### C. Grant Street Affidavit

Defendant argues that the Grant Street Affidavit fails to corroborate any of the information provided by the CI, and therefore the warrant-issuing judge could not have believed that the CI was being truthful or basing his or her accusations on facts. (ECF No. 35, PageID 89). As the Court has already explained, a warrant affiant need not corroborate information received from a CI who is known to the affiant. *United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019); *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003). The Grant Street Affidavit, like GPS Affidavits #1 and #2, contain evidence that Brandenburg was familiar with the CI referenced therein. According to Brandenburg, CS-1 told Brandenburg that Defendant possessed and was trafficking fentanyl, cocaine, marijuana and methamphetamine from Grant Street. (ECF No. 35-

16

6, PageID #127). CS-1 also told Brandenburg that Defendant kept firearms at Grant Street. (*Id.* at PageID #129). With respect to CS-1, Brandenburg swore:

> Affiant states that the confidential informant (CS-1) listed in the previous paragraphs of this affidavit have [*sic*] provided the Affiant and APD Narcotics detectives with information concerning the possession and sale of controlled substances in the Akron, Summit County, Ohio area, which information has been corroborated by APD Narcotics detectives. The CS-1 has conducted multiple controlled buys while working for the [APD]. The CS-1 is assisting law enforcement in exchange for monetary compensation. Further, the CS-1 has displayed to [*sic*] specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area.

(*Id.* at PageID#127).

Despite Brandenburg's familiarity with CS-1, CS-1's information was also corroborated. APD Narcotics detectives executed three controlled drug purchases from Defendant at Grant Street, purchasing both fentanyl and methamphetamine. (*Id.* at PageID #127–28). Brandenburg conducted mobile and stationary surveillance of Grant Street and observed short-term traffic consistent with drug trafficking. (*Id.* at PageID #128). The GPS tracking data captured within seven days of Brandenburg signing the Grant Street Affidavit showed Defendant leave Grant Street and travel to Sharon Street, where Defendant engaged in short-term meetings consistent with drug trafficking. (*Id.*). To whatever degree Defendant thinks the information from Detective McClung at the Parkersburg Narcotics Task Force required further corroboration beyond McClung's statements regarding his informant's reliability, the controlled drug buys enumerated in the Grant Street Affidavit adequately do so.

As the Government points out, a police-monitored controlled drug purchase at the location to be searched "provide[s] sufficient probable cause to sustain issuance of the search warrant." *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (citing *United States v. Coffee*, 434 F.3d 887, 894–95 (6th Cir. 2006); *see United States v. Abdalla*, 972 F.3d 838, 848–50 (6th Cir.

17

2020) ("An affidavit describing both an informant's controlled purchase while under police surveillance and the officers' arrangements for the controlled purchase gives sufficient corroborating information to uphold a lower court's finding that probable cause existed."). That is precisely what the Court has before it here. Between CI and CS-1's reliability, the numerous controlled drug buys at Grant Street, the information from Detective McClung, and APD's extensive surveillance of Defendant's BMW as it traveled to known drug locations, the warrant-issuing judge had a substantial basis for finding probable cause for the issuance of the Grant Street search warrant.

### D. Comet Lane Affidavit

Finally, Defendant argues that there is insufficient evidence connecting Defendant or any of the illegal activity he is alleged to have committed to Comet Lane. (ECF No. 35, PageID #87). To establish a nexus between the place to be searched and the evidence sought, suspicion that a property owner is engaged in drug trafficking is not enough." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) (citing *Zurcher v. Stanford Daily*, 436 U.S. 549, 556 (1978)). Instead, a warrant affidavit must establish "that there is reasonable cause to believe the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* (citing *Zurcher*, 436 U.S. at 556).

The Sixth Circuit does not require law enforcement to observe illegal activity in a suspect's residence to justify a warrant to search that residence. *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019) (upholding residential search warrant when the affidavit contained statements concerning three controlled drug buys, which demonstrated that the defendant was actively trafficking drugs, two of the defendant's cars were regularly parked in the driveway, and officers observed the defendant travel directly from his home to a drug sale); *Gunter*, 266 F. App'x at 419

(upholding residential search warrant when officers observed the suspect travel directly from his residence to a drug sale); *see United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002) (upholding residential search warrant when officers recovered a piece of paper incident to arresting the suspect, which included the suspect's address); *United States v. Caicedo*, 85 F.3d 1184 (6th Cir. 1996) (upholding residential search warrant when suspect lied about his address)

The Court need not belabor its analysis here. Like *Coleman*, the Comet Lane Affidavit described numerous controlled drug purchases. (ECF No. 35-5, PageID #113–14). Brandenburg attested to the fact that Defendant lived at Comet Lane with Amanda Prater. (*Id.* at PageID #115). Brandenburg bases this conclusion on his mobile and electronic surveillance of Defendant's BMW, during which he observed Defendant's BMW travel from Grant Street to Comet Lane in the late evening hours and remain in the ca driveway overnight and into the early morning hours. (*Id.*). CS-1 also told Brandenburg that Defendant regularly possessed firearms at Grant Street, which Defendant kept on his person. (*Id.*). Like *Gunter*, Brandenburg observed Defendant travel directly from Comet Lane to both Grant Street and Sharon Street, where APD conducted controlled drug purchases. (*Id.*). Brandenburg also followed Defendant from Comet Lane directly to the corner of Rhodes Avenue and West Market Street, where he observed Defendant engage in a brief car-to-car meeting with another individual in a parking lot before driving away. (*Id.* at PageID #116). Together with the other allegations in the Comet Lane Affidavit, the warrant-issuing judge could reasonably have inferred that this brief meeting was consistent with a drug transaction.

Under Sixth Circuit precedent, the assertions in the Affidavit provide a sufficient nexus between Defendant's alleged criminal activity and Comet Lane. Therefore, the state judge had a substantial basis for finding that the Affidavit provided probable cause for the issuance of the warrant for Comet Lane.

## IV. CONCLUSION

The GPS Affidavits, the Grant Street Affidavit, and the Comet Lane Affidavit were not "bare bones." Each contained a substantial basis for the issuing judge's probable cause determination. Accordingly, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**Dated June 9, 2025**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**